**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ALFONSO RIZZUTO,

                              Plaintiff,              9:23-cv-515 (BKS/PJE)

v.

JOHN J. MORLEY, et al.,

                              Defendants.

**Appearances:**

*Plaintiff Pro Se:*
Alfonso Rizzuto
Duryea, PA 18642


*For Defendants:*
Letitia James
Attorney General of the State of New York
Aimee Cowan
Assistant Attorney General
300 South State Street, Suite 300
Syracuse, NY 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

I.    **INTRODUCTION**

        Plaintiff pro se Alfonso Rizzuto brings this action asserting claims under 42 U.S.C. §

1983 arising out of his incarceration at Eastern Correctional Facility. (*See* Dkt. No. 1). On

December 4, 2024, Defendants filed a motion for summary judgment pursuant to Fed. R. Civ. P.

56(a). (Dkt. No. 30). Plaintiff opposed the motion. (Dkt. No. 35). This matter was assigned to

Magistrate Judge Paul J. Evangelista, who on August 19, 2025 issued a Report-Recommendation

recommending that the motion be granted in part. (Dkt. No. 45). Specifically, Magistrate Judge

1

Evangelista recommended that the following claims be dismissed: the Eighth Amendment deliberate indifference to serious medical needs claims against Dr. Gusman and Morley, the First Amendment retaliation claims against Dr. Gusman, the First Amendment retaliation claims against Zweck, O'Brien, and Read based on plaintiff's allegations that they retaliated against him for complaints he filed against Zweck and nonparty corrections officers, and the Fourteenth Amendment due process claim against Dr. Gusman. (*Id.*) Magistrate Judge Evangelista recommended that the motion for summary judgment be denied as to the First Amendment retaliation claims against Zweck, O'Brien, and Read based on Plaintiff's allegations that they retaliated against him for attempting to defend himself at his disciplinary hearing, and as to the Eighth Amendment excessive force and failure-to-intervene claims against defendants Zweck, O'Brien, and Read. (*Id.*).

Plaintiff and Defendants have filed objections to the Report-Recommendation, (Dkt. Nos. 46, 47), and Defendants responded to Plaintiff's objections, (Dkt. No. 51). For the reasons that follow, the Report-Recommendation is adopted in part and rejected in part.

## II.    STANDARD OF REVIEW

The Court reviews de novo those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [Report-Recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (citation omitted). Properly raised objections must be "specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). "[E]ven a pro se party's objections to a

Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal[.]" *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920, at *2, 2011 U.S. Dist. LEXIS 95351, at *4 (S.D.N.Y. Aug. 25, 2011) (citation omitted). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Molefe*, 602 F. Supp. 2d at 487.

## III.    DISCUSSION

As a preliminary matter, the Court has reviewed the Report-Recommendation applying the standard applicable to motions for summary judgment, that is whether Plaintiff has raised a genuine issue of material fact as to each of his claims. *See Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S De R L De C.V.*, 147 F.4th 73, 88 (2d Cir. 2025) ("A motion for summary judgment may properly be granted . . .  only where there is no genuine issue of material fact to be tried, and the facts to which there is no such issue warrant the entry of judgment for the moving party as a matter of law.") (citation omitted).

### A.  Plaintiff's Deliberate Indifference Claim Against Dr. Gusman

In his declaration in opposition to the motion for summary judgment, Plaintiff avers that he suffers from an acute form of psoriasis, and when it is not addressed he suffers "from excruciating pain, accompanied with scabbing scars and bleeding." (Dkt. No. 35-2, at 2). Plaintiff claims that doctors at Rikers Island "formulated a successful course of treatment" that "involved a number of creams and salves that combined to keep [his] psoriasis in check." (*Id.*). While at Rikers Island, Plaintiff went to medical every night to be provided with treatments. (*Id.*). After he was sent upstate in 2017, and after he received a "detailed dermatological consult with Dr. Miranda," the "effective combination that relieved [him] of [his] pain red skin and bleeding" was re-established. (*Id.* at 2–3).

Plaintiff asserts that he arrived at Eastern "with detailed orders" from Dr. Miranda, but that Dr. Gusman "repeatedly denied [Plaintiff] the salves and creams that Dr. Miranda ordered." (*Id.*). "[O]n . . . nearly half of [Plaintiff's] visits with [Dr. Gusman], [Dr. Gusman] harped on why [Plaintiff] had so many salves and creams and that they were too expensive and that Commissioner Morley was on his back about the costs." (*Id.* at 3). Plaintiff asserts that he saw Dr. Miranda "on an outside medical trip," and that Dr. Miranda did not change the treatment plan, but Dr. Gusman failed to follow it. (*Id.*). Plaintiff asserts that because of Dr. Gusman and Morely's "attempt to penny pinch" and "contravene" Dr. Miranda's treatment plan, Plaintiff "suffered redness, lesions, scarring, excruciating pain and infections." (*Id.* at 3–4). Plaintiff asserts that this, together with the "polluted water" for showers and Dr. Gusman's refusal to permit Tucks pads to clean, "resulted in pustules developing on [Plaintiff's] legs and infections on [his] foot and body," and that he "suffer[s] to this day from these same pustules and infections." (*Id.* at 10–11).

Magistrate Judge Evangelista found that Plaintiff failed to show that Dr. Gusman was deliberately indifferent to Plaintiff's medical needs because Plaintiff failed to meet either the objective or subjective prong of the deliberate indifference standard. (Dkt. No. 45, at 25–31). Magistrate Judge Evangelista noted that while Plaintiff preferred his original treatment plan, "mere disagreement over the proper treatment does not create a constitutional claim." (*Id.* at 26) (quoting *Davila v. UConn Med. Ctr.*, 353 F. App'x 490, 492 (2d Cir. 2009)). In light of Dr. Gusman's numerous prescriptions for different creams or medications, his prescription of phototherapy three times a week for seven weeks and his "referrals to several specialists to determine the best treatment plan," including "plaintiff's previous dermatologist, an allergist and a gastroenterologist," Magistrate Judge Evangelista concluded that Plaintiff failed to show he

was deprived of adequate medical care. (*Id.* at 26–28). Magistrate Judge Evangelista further found that "given the nature and extent of Dr. Gusman's treatment of [Plaintiff's] psoriasis and resultant symptomology, Dr. Gusman did not have a sufficiently culpable state of mind— reckless disregard to a known, substantial risk of harm to plaintiff—to satisfy the deliberate indifference standard." (*Id.* at 28).

Plaintiff objects to the recommendation to dismiss his claims against Dr. Gusman for deliberate medical indifference. (Dkt. No. 47). Plaintiff argues that he has raised a material issue of fact because Dr. Gusman's deviation from Plaintiff's previous treatment plan caused his condition to get "so bad . . . that [Dr. Gusman] had to have plaintiff involuntarily moved to the infirmary for recovery purposes." (*Id.* at 1–3). Plaintiff also objects to the Magistrate Judge's refusal to consider evidence that Dr. Gusman "was motivated by cost savings, and NOT [Plaintiff's] medical needs." (*Id.* at 3). Having reviewed the record de novo, the Court agrees with Magistrate Judge Evangelista that Dr. Gusman is entitled to summary judgment on Plaintiff's deliberate indifference claim for the reasons set forth below.

To prevail on a claim for deliberate indifference to serious medical needs under the Eighth Amendment a plaintiff must prove that (1) objectively the alleged deprivation of medical care was "sufficiently serious," and (2) subjectively the defendant acted or failed to act "while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023). To satisfy the mens rea prong "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must draw that inference." *Hathaway v. Coughlin*, 99 F.3d at 550, 553 (2d Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "'[M]ere medical

malpractice' is not tantamount to deliberate indifference," unless "the malpractice involves a culpable recklessness, i.e., . . . 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553).

### a. Dr. Gusman's Treatment of Plaintiff

Plaintiff was transferred to Eastern Correctional Facility on October 16, 2019. (Dkt. No. 45 at 8). The medical records reflect that Plaintiff was seen multiple times for his psoriasis condition. (*see* Dkt. No. 30-16). Although Dr. Gusman did not adopt the treatment Plaintiff sought, Dr. Gusman undertook significant efforts to attempt to address Plaintiff's condition. (*See id.*; Dkt. No. 30-15). On November 12, 2019 Dr. Gusman wrote Plaintiff, "I just requested additional dermatology evaluation for you. I want dermatologist to clarify his orders and provide detailed explanation and rational for each medication he suggested. I also want him to decide about the necessity of additional skin biopsy." (Dkt. No. 30-16, at 4). On November 15, 2019, Dr. Gusman wrote, in response to a grievance by Plaintiff, that Dr. Miranda's suggestions "need clarification"; Dr. Gusman noted that the suggestions included twelve "different emollients, creams and ointments." (*Id.* at 5). Dr. Gusman also noted that he "requested dermatology consult to clarify these orders and to get explanation and rational for ordering these medications." (*Id.*)

On December 5, 2019 Dr. Gusman detailed a "plan of management" for Plaintiff that included seeking a "dermatology consult to determine his further skin management," a urology consult, and checking for allergies. (*Id.* at 10). On December 10, 2019, Dr. Gusman wrote a memorandum to Dr. Miranda asking him to re-evaluate Plaintiff. (*Id.* at 8). Dr. Gusman wrote, "I reviewed your suggestions for his management and respectfully disagree with them. . . . Patient cannot be on all those emollients at the same time" (*Id.*) (citing to five different emollients). Dr. Gusman asked for an "explanation and rational for using that many emollients at the same time."

6

(*Id.*). Dr. Gusman noted that Plaintiff was "self-harming his skin by rubbing [T]ucks pads to his skin in order to 'clean his skin.'"; that the biopsy Dr. Miranda performed was discarded because he used "a wrong biopsy kit"; and that Dr. Gusman was sending "a right biopsy kit." (*Id.*). Dr. Gusman requested "new revised orders of [Plaintiff's] management with explanation and rational for each medication." (*Id.*). Records reflect that Dr. Gusman spoke to Dr. Miranda on the telephone on December 18, 2019, in connection with Dr. Miranda's suggestions for five medications to be applied to the skin and six medications "to be used when needed." (*Id.* at 11). Dr. Miranda also suggested "referral to allergist and Fishkill dermatology for second opinion." (*Id.*).

Dr. Gusman referred Plaintiff to an allergologist for a consultation. (*Id.* at 12). In the referral request Dr. Gusman wrote that the reason for the consultation was Plaintiff's "multiple food allergies" and "significant skin rashes," noting that Plaintiff "needs initial allergy evaluation for possible desensibilization therapy." (*Id.*). The allergologist saw Plaintiff on January 28, 2020. (*Id.* at 21). Dr. Gusman also referred Plaintiff to a gastroenterologist for a consultation, In that referral request Dr. Gusman wrote that Plaintiff has an extensive history of "skin problems," and an allergist opined that Plaintiff "has no food allergy and needs to be evaluated for celiac disease or IBS." (*Id.* at 12). Dr. Gusman's notes on January 28, 2020 state that Plaintiff's Gliadin tests were negative but that Dr. Gusman would "order extensive Celiac disease panel with subsequent fu by the GI." (*Id.* at 17). Dr. Gusman also noted that "Tucks pads are intended for hemorrhoids"; using them for skin cleaning is "inappropriate" and Dr. Gusman would not approve. (*Id.*).

Plaintiff saw Dr. Miranda on January 29, 2020, in accord with Dr. Gusman's request for a consultation. (*Id.* at 18). Following this appointment, Dr. Miranda wrote that Plaintiff reported

his current medications are "not working as well as the original regime started at Bellevue Hospital," and listed the fifteen lotions and ointments in that regime. (*Id.* at 19).

Dr. Gusman's notes from his exam on January 31, 2020 state that Plaintiff had a "skin biopsy of rt upper arm and rt lower leg" on January 29, 2020; that Plaintiff had "multiple rashes and itches", "redness of soles and palms", and that "[i]n the opinion of Allergologist," Plaintiff's "rashes and dyspepsia are not related to food allergy"; the allergologist "suggested work-up for Celiac disease"; and Dr. Gusman "ordered Celiac panel as well as GI consult." (*Id.* at 21).

On February 18, 2020, Dr. Gusman directed that Plaintiff receive Neutrogena soap weekly and that all other special soaps be discontinued. (*Id.* at 22). That day Dr. Gusman ordered seven weeks of phototherapy for Plaintiff. (*Id.* at 23). Dr. Gusman saw Plaintiff on March 9, 2020, again noting "skin multiple rashes and itches" and "redness of soles and palms." (*Id.* at 24). Dr. Gusman noted redness and irritation of skin in the Achilles tendon of the right foot: "Patient is applying [T]ucks pads to the skin despite MD recommendation not to do that." (*Id.*). Dr. Gusman noted that the "panel for Celiac disease was negative" and Plaintiff "has pending EGD." (*Id.*) Dr. Gusman directed the application of two ointments and a cream daily. (*Id.*)

Dr. Gusman saw Plaintiff on March 23, 2020, and reported the same information regarding skin rashes and redness and the application of Tucks pads to the skin, contrary to medical advice. (*Id.* at 25). Dr. Gusman noted that "[a]fter sitting for 1-2 hours after direct observation redness [in the Achilles tendon] greatly subsided." (*Id.*). Dr. Gusman directed the application of two ointments and a cream daily. (*Id.*) He noted that Plaintiff would be "seen by the dermatologist to follow-up skin punch biopsy and determine further management" and directed "cell feeding till 5/31/2020." (*Id.*). Dr. Gusman's notes from March 26, 2020 list two

different ointments and a cream, note that Plaintiff "can do dressings himself twice a day," and direct that he be seen in a week for re-evaluation. (*Id.* at 26).

A note from April 2, 2020 indicates that Dr. Gusman directed Plaintiff to return daily at 1 p.m. "for wound treatment." (*Id.* at 27). As of April 16, 2020 Plaintiff was "having dressing cha[n]ges every day ay [sic] the medical unit." (Dkt. No. 49, at 8). Dr. Gusman provided directions and medication for treatment of Plaintiff's skin wound on April 21, 2020, and saw Plaintiff again about this on May 5, 2020. (Dkt. No. 30-16, at 28–29). On May 14, 2020, Plaintiff was admitted to the infirmary to continue treating the wounds on his heel. (Dkt. No. 30-15, ¶ 29; Dkt. No. 30-16, at 31). Dr. Gusman's notes on May 15, 2020 state that the dermatology follow-up was postponed due to COVID-19. (Dkt. No. 30-16, at 34). Dr. Gusman noted that Plaintiff is getting daily dressings with an ointment, has "bed rest to expedite healing of his skin abrasions," has feeding in his cell and "will be seen by the dermatologist to follow-up skin punch biopsy and determine further management." (*Id.*).[1] In a response to a grievance by Plaintiff, Dr. Gusman wrote on June 19, 2020 that Plaintiff "is on bed rest, undergoes dressing changes and medical manipulations according to medical orders," and is "[n]ot ready to be discharged to the general population." (Dkt. No. 49, at 10).

During the course of Dr. Gusman's treatment of Plaintiff, Dr. Gusman personally provided him with fourteen medications "related to treating his psoriasis and other wounds, including the wound on his heel." (Dkt. No. 30-15, ¶ 32) (listing the medications). Throughout his treatment Dr. Gusman responded to grievances filed by Plaintiff, noting, inter alia, that Plaintiff "receives health care according to the medical standards," (Dkt. No. 49, at 4), and his

---

[1] On June 17, 2020, Eastern physician Ann Andola noted that Plaintiff had suspected self-inflicted skin lesions on his calf and heel. (Dkt. No. 30-16, at 37). Dr. Andola requested a consultation to rule out obsessive/compulsive disorder or Munchausen Syndrome–a "disorder where an individual intentionally produces physical or psychological symptoms to appear sick." (*Id.*; Dkt. No. 30-15, ¶ 31).

"actual medical needs," (*Id.* at 2), "not what he wants," (*Id.* at 5); and that in Dr. Gusman's

"professional opinion [Plaintiff's] medical needs [were] addressed." (*Id.* at 3, 5). In his

declaration Dr. Gusman states that during these appointments he "listened to and noted

[Plaintiff's] complaints, evaluated his psoriasis condition, ordered appropriate diagnosis test or

referrals, and made decisions as to the appropriate course of treatment using [his] professional

judgment. (Dkt. No. 30-15, ¶ 34). Dr. Gusman states that he "made decisions as to the

appropriate course of treatment using [his] medical judgment." (*Id.* ¶ 9).

### b.  Analysis

Plaintiff objects to Magistrate Judge Evangelista's refusal to consider evidence that Dr.

Gusman's treatment was based on costs, as opposed to medical needs. (Dkt. No. 47, at 3).

Plaintiff stated, in his declaration in opposition to the motion for summary judgment, that on

"nearly half of my visits with [Dr. Gusman], he harped on why I had so many salves and creams

and that they were too expensive and that Commissioner Morley was on his back about the

costs." (Dkt. No. 35-2, at 3). Plaintiff also averred that during his consultation with Dr. Miranda,

Dr. Miranda told Plaintiff that "Dr. Gusman was constantly trying to get him to change his orders

because the treatments were 'too expensive' and that Morely was 'on' Dr. Gusman to cut the

costs." (*Id.*). Magistrate Judge Evangelista declined to consider these conversations because they

were not in Plaintiff's complaint or deposition testimony, and because Plaintiff did not cite to

any admissible evidence in support of his alleged conversation with Dr. Miranda. (Dkt. No. 45,

at 29-30).

Plaintiff acknowledges, in his objections, that Dr. Miranda's statement to him is

hearsay. (Dkt. No. 47, at 3); s*ee AngioDynamics, Inc. v. C.R. Bard, Inc.*, 537 F. Supp. 3d 273,

318 (N.D.N.Y. 2021) ("The Court may only consider admissible evidence in ruling on a motion

for summary judgment." (citation and internal quotation marks omitted)). Plaintiff notes, however, that Dr. Gusman's statement to Plaintiff is not hearsay because it is a party admission. (Dkt. No. 47, at 3). Plaintiff argues that he did not have to plead this fact in his complaint, or testify to it in a deposition for it to be considered by the Court. (*Id.* at 3–4). The Court agrees that Dr. Gusman's statement to Plaintiff is a party admission, and not hearsay. Fed. R. Evid. 801(d)(2). The Court also agrees with Plaintiff that this is not the kind of new claim that a plaintiff would have to plead in his complaint for the Court to consider it. Defendant objects to the Court's consideration of this statement because Plaintiff did not mention it in his deposition, presumably because he failed to include it when he was asked, on one occasion, to describe his allegations against Dr. Gusman, (Dkt. No. 30-5, at 43), but Defendants have not cited to any caselaw supporting that argument. (Dkt. No. 51, at 3). The Court will therefore consider it.

A doctor "may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan." *Chance*, 143 F.3d at 703 (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)). And a plaintiff may establish deliberate indifference by showing that a doctor denied medications based solely on costs, and not on actual medical need. *See*, *e.g., id.* at 704 (holding that an allegation that doctors recommended an unnecessary extraction of plaintiff's teeth "not on the basis of medical views, but because of monetary incentives," was a sufficient allegation of ulterior motives to show a culpable state of mind for a deliberate indifference claim); *Ferla v. Corr. Managed Health Care*, No. 15-cv-1303, 2015 WL 5826812, at *3, 2015 U.S. Dist. LEXIS 135103, at *7 (D. Conn. Oct. 2, 2015) (permitting the plaintiff to amend his complaint to state a cognizable claim by "alleg[ing] facts showing that a medical provider denied surgery solely for cost-saving purposes"); *Gazzola v. Cnty. of Nassau*, No. 16-cv-0909, 2022 WL 2274710, at *11, 2022 U.S. Dist. LEXIS 111609, at *27 (E.D.N.Y. June 23, 2022) (holding that

an allegation that a nurse deferred the decedent's treatment until the morning to "save costs on off-site medical care," was sufficient to satisfy the subjective prong of the plaintiff's deliberate indifference claim).

But here, even considering the evidence that Dr. Gusman said Morely was "on [Dr. Gusman's] back about the costs" of Plaintiff's creams and salves, (Dkt. No. 35-2, at 3), the Court finds that Plaintiff has failed to adduce a material issue of fact from which a jury could find the subjective element of deliberate indifference. The crux of Plaintiff's deliberate indifference claim is that Dr. Gusman did not follow Dr. Miranda's treatment plan which included multiple creams and ointments. Plaintiff's "mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703.

Here, Dr. Gusman referred Plaintiff to three outside consultations including one with Dr. Miranda; Dr. Gusman sought information from Dr. Miranda, and himself consulted with Dr. Miranda; and Dr. Gusman provided multiple treatments to Plaintiff, including treatments with fourteen different medications. On this record evidence that Dr. Gusman was concerned about the cost of the multiple medications recommended by Dr. Miranda is not enough from which a jury could find that Dr. Gusman was actually aware of a substantial risk of serious harm from the course of treatment he followed and the medications that he prescribed, and that he consciously disregarded that risk. In *Jones v. Montalbano*, No. 9-CV-4548, 2012 WL 847373, 2012 U.S. Dist. LEXIS 33558 (E.D.N.Y. Mar. 13, 2012), for example, the district court found that the plaintiff failed to raise a material issue of fact as to the subjective element when the plaintiff's "sole allegation" regarding the doctor's state of mind is that the doctor canceled the prescription medication and ordered the generic version with the intent of cutting costs to DOCCS. *Jones*, 2012 WL 847373, at *4, 2012 U.S. Dist. LEXIS 33558, at *10–11. The court noted that the

12

plaintiff failed to allege facts establishing that the doctor ordered the plaintiff to take the generic medication "while actually aware of a substantial risk that serious inmate harm [would] result." *Id.* Plaintiff's claim here fails for the same reason. Considering the record of treatment, the referrals to consultants and the fourteen medications that Dr. Gusman did prescribe over the course of treating Plaintiff, Plaintiff has failed to raise a genuine issue of fact from which a jury could find that Dr. Gusman consciously disregarded a substantial risk of serious harm to Plaintiff. *See Mills v. Luplow*, 391 F. App'x 948, 951–52 (2d Cir. 2010) ("Even if the record disclosed sufficient evidence of [a policy designed to cut costs by limiting prisoner's access to a nurse and outside specialists], the record belies [plaintiff's] assertion that the policy resulted in deliberate indifference in his case.")

### B.  Plaintiff's Due Process Claim Against Dr. Gusman

To establish "a procedural due process claim under the Fourteenth Amendment, a prisoner must establish that (1) the state has created a liberty interest protected by the Due Process Clause and (2) limits on that liberty interest "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Baltas v. Chapdelaine*, No. 22-2813-cv, 2025 WL 2524458, at *6, 2025 U.S. App. LEXIS 22653 (2d Cir. Sep. 3, 2025) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Plaintiff objects to Magistrate Judge Evangelista's recommendation that his due process claim against Dr. Gusman be dismissed. (Dkt. No. 47, at 4–5). Plaintiff argues that a prisoner's right to recreation is "foundational," citing to *McCray v. Lee*, 963 F.3d 110 (2d Cir. 2020), and that his "denial of recreation claim presents material issues of fact." (Dkt. No. 47, at 5). Plaintiff asks the Court to consider the entire 129-day time that he was in the infirmary, from May 14, 2020 until September 20, 2020. (Dkt. No. 35-2 at 8–9).

In their summary judgment motion Defendants argued that the due process claim should be dismissed because the medical confinement did not impose atypical and significant hardship and Plaintiff failed to establish a liberty interest. (Dkt. No. 30-2, at 37–41). Specifically, Defendants noted that Plaintiff was only in the infirmary for thirty-three days and then ten days when he was not under disciplinary restrictions arising out of his disciplinary convictions with which Dr. Gusman had no involvement. (*Id.* at 39, 41). Defendants argued that because this is less than 101 days, "it does not raise a liberty interest warranting due process protections, and thus 'requires proof of conditions more onerous than usual.'" (*Id.* at 41) (quoting *Greathouse v. Meddaugh*, 632 F.Supp. 3d 3, 14 (N.D.N.Y. 2022)).

Judge Evangelista, however, correctly found that the Court must consider the entire 129-day loss of recreation because the loss of recreation was due to Plaintiff's medical confinement, not the disciplinary sanctions. Judge Evangelista noted:

> [D]efendants concede that [P]laintiff would have had access to outdoor recreation if he were medically cleared and if he were serving his sanctions in the SHU.[2] Thus, it is clear that the restriction on plaintiff's access to outdoor recreation did not arise from [P]laintiff's disciplinary sanctions, rather his placement in the infirmary and/or the bedrest ordered. The relevant time for consideration whether there exists a liberty interest as it relates to outdoor recreation is the entirety of his stay in the infirmary–from May 14, 2020 to September 20, 2020–amounting to 129 days.

(Dkt. No. 45, at 58).

"It is well-settled that a brief deprivation of recreation privileges . . . does not constitute an atypical and significant hardship implicating a protected liberty interest." *Animashaun v. Fischer*, No. 19-cv-0820, 2020 WL 374578, at *16, 2020 U.S. Dist. LEXIS 11093, at *40 (N.D.N.Y. Jan. 23, 2020) (collecting caselaw finding that the loss of recreation for time periods

---

[2] Captain Haugen informed Plaintiff, in response to Plaintiff's August 14, 2020 grievance, that if Plaintiff was "medically cleared for participation in a 1-hour recreation period, once requested, you would be afforded that privilege." (Dkt. 30-10, at 1).

from seven to twenty-one days did not create an atypical hardship). Here, however, the 129-day period was not brief. In its guidelines for determining whether a prisoner's liberty interest was infringed, the Second Circuit has noted that "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required . . .  In those situations a district court must make a fact-intensive inquiry, . . . examining the actual circumstances of [Special Housing Unit] confinement in the case before it without relying on its familiarity with SHU conditions in previous cases." *Palmer v. Richards*, 364 F.3d 60, 64–65 (2d Cir. 2004) (internal quotation marks and citations omitted). "Disputes about conditions may not be resolved on summary judgment, . . . but where the conditions are undisputed, the *Sandin* issue should be resolved by the court as a matter of law." *Id* at 65.

On this record, the Court finds that the Court cannot rule as a matter of law as to whether Plaintiff had a protected liberty interest. Dr. Gusman stated, in his declaration, that he admitted Plaintiff to the infirmary in May 2020 "so that his skin condition and wounds could be monitored, and his bandages could be appropriately changed," and that Dr. Gusman "prescribed bed rest to expedite healing his wounds." (Dkt. No. 30-15, ¶ 35). In a letter on May 16, 2020, two days after he had been admitted to the infirmary, Plaintiff complained about not getting any recreation time and asserted that he did not need to be treated in the infirmary because he had been going to sick calls and treated there every day. (Dkt. No. 30-8). There is nothing in Dr. Gusman's declaration regarding the ongoing need for bed rest after Plaintiff's admission in May 2020. In response to a grievance, , Dr. Gusman wrote on June 19, 2020 that Plaintiff "is on bed rest, undergoes dressing changes and medical manipulations according to medical orders," and is "[n]ot ready to be discharged to the general population." (Dkt. No. 49, at 10). Although Plaintiff

was told on August 30, 2020, that he would be afforded the privilege of a one-hour recreation period, "once requested," if he was "medically cleared," (Dkt. No. 30-10, at 1), the Court could not find anything in the record addressing the issue of recreation after August 30, 2020. In light of the intermediate length of time, the Court finds that Plaintiff has raised an issue of material fact as to whether he had a liberty interest. The Court thus disagrees with Magistrate Judge Evangelista's recommendation to dismiss the due process claim against Dr. Gusman, and denies the motion to dismiss that claim.

### C.  Plaintiff's First Amendment Retaliation Claim Against Dr. Gusman

Magistrate Judge Evangelista noted that Plaintiff had filed grievances concerning medical care and that Dr. Gusman admitted Plaintiff to the infirmary on May 14, 2020, where he remained until September 20, 2020, but found that admitting Plaintiff to the infirmary did not constitute an adverse action. (Dkt. 45 at 38–40). In any event, Magistrate Judge Evangelista concluded that Plaintiff failed to establish the causation element of his First Amendment retaliation claim against Dr. Gusman. (*Id.* at 40–41).

Plaintiff objects to Magistrate Judge Evangelista's recommendation to dismiss the First Amendment retaliation against Dr. Gusman. (Dkt. No. 47). Plaintiff's objection is, however, simply a rehash of arguments that he previously made and were considered by Magistrate Judge Evangelista. *Compare* Objections (Dkt No. 47, at 4-5) *with* Opposition to motion for summary judgment (Dkt. No. 35-1 at 1–2; Dkt. No. 35-2, at 11). Plaintiff has failed to raise a specific objection to Magistrate Judge Evangelista's First Amendment retaliation analysis, and the Court has therefore reviewed that recommendation for clear error. The Court agrees with that recommendation for the reasons set forth below.

To prevail on a First Amendment retaliation claim, a plaintiff must establish: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020) (alteration in original) (quoting *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014)). A plaintiff must prove that the adverse action would not have taken place "but-for" the retaliatory motive, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019).

Here there is no dispute that Plaintiff engaged in protected speech;[3] at issue is whether Dr. Gusman took adverse action and, if so, whether it was causally connected to the protected speech. Dr. Gusman admitted Plaintiff to the infirmary on May 14, 2020; in his declaration he states that it was for treatment on wounds on Plaintiff's heel. (Dkt. No. 30-16, at 31; Dkt. No. 30-15, ¶ 29). Dr. Gusman states that he ordered Plaintiff to remain on bed rest "to expedite healing his skin abrasions, which were located on his right foot and other areas of his body." (Dkt. No. 30-15, ¶ 29). Plaintiff does not contest the fact that he had abrasions. (*See* Dkt. No. 35-2, at 8; Dkt. No. 47, at 4). Plaintiff argues that they evince the improper treatment that led to the deterioration of his psoriasis condition. (Dkt. No. 47, at 4). Plaintiff complains about the conditions inside the infirmary asserting, inter alia, that he was not given recreation, not allowed to go to the law library, and could not make multiple phone calls. (Dkt. No. 35-2, at 8–9). The record reflects that Plaintiff received keeplock confinement and had disciplinary restrictions

---

[3] Plaintiff avers in his declaration in opposition to the motion for summary judgment, that he made written complaints regarding Dr. Gusman's medical care to the DOCCS Deputy Commissioner for Medical, John Morley, on November 25, 2019, December 19, 2020, February 4, 2020, March 3, 2020, June 15, 2020, July 20, 2020, and September 18, 2020. (Dkt. No. 35-2, at 7). The record reflects that from November 15, 2019, through April 24, 2020, Dr. Gusman wrote eleven memoranda to the grievance supervisor and director of administration responding to Plaintiff's grievances and complaints. (Dkt. No. 30-16, at 5; Dkt. No. 49).

during most of his time in the infirmary. (Dkt. No. 30-23, ¶¶ 19–20; Dkt. No. 30-25, at 7; Dkt. No. 30-29, at 2). There is no evidence, however, that Dr. Gusman had anything to do with these conditions beyond directing that Plaintiff be on bed rest. Dr. Gusman avers that he "was not involved in the disciplinary process and did not make any decisions regarding any disciplinary restrictions," (Dkt. No. 30-15, ¶ 35), and Plaintiff has not adduced any evidence suggesting otherwise.

Even if Dr. Gusman's decision to admit Plaintiff in the infirmary, and direct that he be on bed rest was an adverse action, Plaintiff has failed to adduce evidence to create a material issue of fact on the issue of causation. Temporal proximity is not enough alone to raise an issue of fact for retaliatory causation. *See Gunn v. Milani*, No. 20-cv-2681, 2024 WL 4124319, at *11, 2024 U.S. Dist. LEXIS 162791, at *20 (S.D.N.Y. Sep. 9, 2024). Dr. Gusman averred that "[e]ven if plaintiff had not filed grievances complaining about his medical care, I still would have recommended that he be admitted to the infirmary so that his skin condition and his wounds could be properly monitored." (Dkt. No. 30-15, ¶ 36). Plaintiff has not cited to any evidence of a retaliatory motive. On this record, where there is no dispute that Plaintiff suffered from skin abrasions, Plaintiff has not adduced evidence from which a jury could infer that Dr. Gusman would not have taken the actions he did absent a retaliatory motive.

### D.    Plaintiff's First Amendment Retaliation Claims Against Zweck, O'Brien and Read

Magistrate Judge Evangelista recommended dismissing Plaintiff's First Amendment retaliation claims against Zweck, O'Brien and Read based upon grievances, but denying the motion to dismiss Plaintiff's claim that these defendants retaliated against Plaintiff for his attempts to defend himself at the June 16, 2020 disciplinary hearing. (Dkt. No. 45, at 41–50).

Defendants object to the recommendation that Plaintiff's First Amendment retaliation claim against Zweck, O'Brien and Read survives. (Dkt. No. 46, at 2). Magistrate Judge Evangelista noted that Defendants did not appear to address this claim in their briefing, (Dkt. No. 45, at 49), and recommended that this claim survive because "there are disputed questions of material fact regarding whether Zweck, Read and O'Brien retaliated against plaintiff for his attempts to defend himself at his disciplinary proceeding." (*Id.* at 50).

Defendants argue that, as a preliminary matter, Plaintiff "does not appear to allege that defendant Zweck or O'Brien retaliated against him for defendant himself at the hearing." (Dkt. No. 46, at 2). Defendants assert that "[t]he portion of plaintiff's deposition testimony that refers to this particular retaliation claim refers to Officer Read." (*Id.*) (citing to Plaintiff's deposition, Dkt. No. 30-5 at 114). The Court finds that Plaintiff has asserted this claim against Zweck, O'Brien and Read. In his complaint, Plaintiff alleges that Zweck "took exception to Plaintiff's attempting to assert his right to proffer" documents in his defense at the disciplinary hearing and that Zweck "set about to have Plaintiff removed from the hearing, signaling to Defendants Read and O'Brien in a pre-determined manner to move-in on Plaintiff," who then was assaulted by Read and O'Brien. (Dkt. No. 1, at 16). In his declaration in opposition to summary judgment, Plaintiff specifically avers that "Zweck, O'Brien and Reed retaliated against [him] for asserting

his right to defend himself at a Tier II misbehavior hearing"; Plaintiff then repeats the allegations in his complaint. (Dkt. No. 35-2, at 12–13).[4]

Defendants also argue that they did address this claim in their summary judgment briefing and ask that the Court consider Read's argument against this retaliation claim to include Defendants Zweck and O'Brien. (Dkt. No. 46, at 2) (citing Dkt. No. 30-2, at 34–36 and Dkt. No. 41, at 19–20). Having reviewed Defendants' objection de novo, and the argument in their summary judgment briefing, the Court agrees with Magistrate Judge Evangelista that there are material issues of fact as to whether Zweck, Read and O'Brien retaliated against Plaintiff for his attempts to defend himself at his disciplinary proceeding.

The Court has reviewed the remainder of the Report-Recommendation, as to which there was no specific objection, for clear error and found none. Accordingly, the Court adopts the Report-Recommendation in part for the reasons discussed above.

### D. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Evangelista's Report-Recommendation (Dkt. No. 45) is **ADOPTED** in part and **REJECTED** in part, for the reasons stated above; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 30) is

**GRANTED** as to (1) the Eighth Amendment deliberate indifference to serious medical needs

---

[4] Although Plaintiff did not, during his deposition, specifically identify his attempt to defend himself at the hearing as a basis for retaliation by Zweck and O'Brien, he has consistently asserted that they were acting in concert. During his deposition, when Plaintiff was asked what Read retaliated against him for, he responded:

> One, because I filed grievances. Two, the way I defend myself at hearings with that written statement, *they* don't want me to submit. And three, *they* didn't want me to put the written statement on the table. As I was getting up to leave, *they* told me to leave, and I was getting up to leave, and I went to go put it on the table and he [Read] was standing right next to me like an attack dog waiting for me to put this paper on the table when Zweck didn't want it.

(Dkt. No. 30-5, at 114–115) (emphasis added).

claim against Dr. Gusman and Morley, and (2) the First Amendment retaliation claims against
Zweck, O'Brien, and Read based on plaintiff's allegations that they retaliated against him for
complaints he filed against Zweck and nonparty corrections officers, and (3) the First
Amendment retaliation claim against Dr. Gusman, and those claims are **DISMISSED**; and it is
further

 **ORDERED** that Defendants' Motion for Summary Judgment (Dkt. No. 30) is **DENIED**
as to (1) the First Amendment retaliation claims against Zweck, O'Brien, and Read based on
plaintiff's allegations that they retaliated against him for attempting to defend himself at his
disciplinary hearing; and (2) the Eighth Amendment excessive force and failure-to-intervene
claims against defendants Zweck, O'Brien, and Read; and (3) the Fourteenth Amendment due
process claim against Dr. Gusman, and those claims will proceed to trial; and it is further

 **ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the
Local Rules.

 **IT IS SO ORDERED.**


Dated: <u>September 25, 2025</u>
   Syracuse, New York

          *Brenda K Sannes*

          Brenda K. Sannes
          Chief U.S. District Judge